UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ABINGTON CONSTRUCTION, INC.,

              *Plaintiff*,

  -against-

M-BOSS, INC., G.J.P. ENTERPRISES, INC. d/b/a American Decorative Ceilings, and WILLIAM PERK, JR.,

              *Defendants*.

---

Civil Case No. 23-cv-2485

## COMPLAINT

Plaintiff, Abington Construction, Inc. ("Plaintiff"" or "Abington"), by and through undersigned counsel, hereby files this Complaint and sues Defendants, M-Boss, Inc ("M-Boss"), G.J.P. Enterprises, Inc. d/b/a American Decorative Ceilings ("GJP"), and William Perk, Jr. ("Perk") (collectively, the "Defendants"), stating as follows:

## INTRODUCTION

In this action, Plaintiff seeks to recover damages from the Defendants for: (i) failing to perform and breaching their obligations to Plaintiff under two (2) separate purchase agreements relating to the acquisition of custom ceiling materials and accessories for resale; and (ii) the improper and illegal conversion of funds owned by and held by Plaintiff in its bank account. Indeed, as a direct result of the Defendants' actions perpetrated against Plaintiff, as more fully described herein, Plaintiff has suffered damages, which are continuing in nature, including lost revenue and profits, incidental and consequential damages due to Plaintiff's inability to sell the

92732373.1

subject goods at a markup, as contemplated by the parties, in addition to Plaintiff's lost opportunity cost and the deprivation of its property (i.e., the money illegally taken from its accounts).

## JURISDICTION, PARTIES, AND VENUE

1. At all times relevant hereto, Plaintiff Abington is and was a corporation incorporated under the laws of the State of New York, with its principal place of business located at 541 Bayview Avenue, Cedarhurst, New York 11516.

2. At all times relevant hereto, Defendant M-Boss is and was a corporation incorporated under the laws of the State of Ohio, with its principal place of business located at 4510 East 71st Street, Suite 12, Cleveland, Ohio 44105.  At all times relevant hereto, Defendant M-Boss was and is doing business in this District.

3. At all times relevant hereto, Defendant GJP is and was a corporation incorporated under the laws of the State of Ohio, doing business under the trade name "American Decorative Ceilings," with its principal place of business located at 4510 East 71st Street, Suite 12, Cleveland, Ohio 44105.  At all times relevant hereto, Defendant GJP was and is doing business in this District.

4. At all times relevant hereto, Defendant Perk is and was a citizen of the State of Ohio, and the continuous 100% owner and operator of Defendants M-Boss and GJP.

5. This Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §1332(a), as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs and there is complete diversity amongst the Plaintiff and the Defendants.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the events and omissions giving rise to the claims herein occurred within this District.

7. Any conditions precedent to the bringing of this action have been satisfied, excused or waived.

92732373.1

## GENERAL ALLEGATIONS

8. For more than the past decade, Plaintiff Abingdon has continuously operated as a deal maker and intermediary in the construction industry space, bringing together manufacturers, such as Defendant M-Boss, and end users, such as contractors and other vendors.

9. As the middle man for these transactions, Plaintiff's business model relies upon its ability to negotiate favorable sale terms from a manufacturer and resell such goods at a mark-up to third party contractor's in need of supply, profiting on the difference between the price paid to the manufacturer and the price it receives from the resale of such goods.[1]

10. In order to remain profitable, it is essential for Plaintiff to work with manufacturers from whom it can not only purchase desired goods from at a reasonable price, but who can also ensure delivery of such goods to Plaintiff in a timely manner, to ensure that Plaintiff can perform and satisfy its obligations owed to its third party buyers under its resale agreements and realize the profits anticipated from the resale of said goods.

11. Through its long standing presence in the construction industry, Plaintiff Abingdon has developed a wide range of contacts across all facets of the space, and successfully built a network of entrusted business partners throughout the United States.

12. Through these contacts, in search of a reliable and trustworthy ceiling material and accessory manufacturer, Plaintiff was introduced to Defendant Perk, the 100% owner and operator of Defendant M-Boss, sometime in the mid 2010's.

---

[1] As it is not uncommon for a manufacturer and end user to have no direct connection to one another, it is incumbent on industry middle men, such as Plaintiff, to take on significant risk in order to help facilitate these type of transactions, often times entering into contracts with end user for the delivery of goods which Plaintiff has not yet acquired and fronting the costs of production to the manufacturer all before ever receiving payment from its final customer.

92732373.1

13. From the first time meeting on, Defendant Perk routinely touted his accomplishments to Plaintiff, repeatedly telling Plaintiff about his track record in the industry, dating back to the 1980's, and boasting about how successful he was from running Defendants M-Boss and GJP.

14. With no reason to doubt Defendant Perk's claims, Plaintiff decided it had found its newest business partner in Defendant M-Boss, a manufacturer with whom Plaintiff could forge a relationship with for the purchase of custom ceiling materials and accessories for resale.

15. At all material times following their introduction, Defendant M-Boss had knowledge that all of the goods and accessories being purchased by Plaintiff were intended for resale by Plaintiff to its 3rd party clients at a markup. Moreover, all material times, Defendant M-Boss knew or should have known that Plaintiff's ability to resell and ultimately profit from the resale of said goods, first required the timely delivery of such items from M-Boss to Plaintiff, a duty which Defendant M-Boss voluntarily accepted and continuously assured Plaintiff of its ability to satisfy.

16. At first, the working relationship between Plaintiff and Defendant M-Boss was business as usual. Indeed, for a period of several years, Defendant M-Boss was the sole and exclusive ceiling material and accessory manufacturer used by Plaintiff, with whom Plaintiff repeatedly and continually purchased custom goods from for resale, a fact that M-Boss was perpetually aware of and with knowledge that Plaintiff's intended resale (and potential profit) from the goods bought from M-Boss was contingent on M-Boss's performance under each purchase order to make timely and complete delivery to Plaintiff of all the items purchased thereunder.

17. Unfortunately, after several successful years (and countless orders) working together, things unexpectedly changed beginning in 2022. To Plaintiff's surprise and dismay, their

once trusted business partner suddenly became wholly unreliable. Starting with frustration over Defendants' repeated failures (and seeming avoidance) to take or return any of Plaintiff's emails or telephone calls, Plaintiff's concerns quickly turned into panic when Defendant M-Boss, despite collecting tens of thousands of dollars from Plaintiff for the production and delivery of the ordered goods, outright stopped performing its obligations owed to Plaintiff, including making delivery (timely or otherwise) of the goods and accessories purchased by Plaintiff and relied upon for resale.

18. More specifically, on or about September 6, 2022, Plaintiff, as it had on countless over times beforehand, entered into an agreement with Defendant M-Boss for the purchase, manufacturing, and delivery of certain custom ceiling materials and accessories, as more fully described therein, for resale to a third party contractor, for the total purchase price of $86,384.54 (the "Agreement"). A true and correct copy of the Agreement is attached hereto and incorporated herein as **Exhibit 1.**

19. Pursuant to the terms of the Agreement, M-Boss was required to make delivery FOB of the goods identified therein (consisting of no less than twenty five (25) specifically identified items) to Plaintiff on or before November 30, 2022. *See* Ex. 1.

20. Immediately thereafter, on or about September 15, 2022, in reliance on Defendant M-Boss's representation regarding delivery and the established course of dealing between them, Plaintiff entered into a contract to resell the goods purchased from Defendant M-Boss pursuant to the Agreement (the "Resale Contract") for the marked up purchase price of $157,030.51 (an anticipated profit of $70,645.97) to Allstate Construction Group ("ACG"), a 3rd party contractor. Pursuant to the terms of the Resale Contract, Plaintiff was required to complete the order thereunder and have such goods ready for delivery within 65 days thereof. A true and correct copy of the Resale Contract is attached hereto as **Exhibit 2.**

92732373.1

21. Subsequently, in accordance with the terms of the Agreement, on or about September 27, 2022, Plaintiff tendered payment in the amount of $86,384.54, as payment in full for the goods, by ACH transfer to M-Boss, which payment M-Boss received and voluntarily accepted.

22. However, despite Plaintiff's satisfaction of its obligations under the Agreement, and M-Boss's receipt of payment in the amount of $86,384.54 for the manufacturing and delivery of the goods described thereunder, and despite having knowledge regarding Plaintiff's intent and contractual obligation to resell the purchased goods, M-Boss failed to deliver the purchased goods to Plaintiff by the November 30th deadline under the Agreement.

23. Following Defendant M-Boss's failure to make delivery FOB to Plaintiff of the goods purchased pursuant to the Agreement, Plaintiff began contacting (and continued for the next 3 months almost daily) Defendants M-Boss and Perk to inquire about the status of the order and delivery of the purchased items.  However, notwithstanding Plaintiff's best efforts to contact Defendants, Plaintiff's phone calls, text messages and emails, all went completely unanswered, leaving Plaintiff completely in the dark, without any knowledge regarding not only when (or if) M-Boss would make delivery of the purchased goods, but also whether M-Boss had completed manufacturing the subject goods under the Agreement.

24. As a direct consequence of Defendant M-Boss's failure to make delivery FOB to Plaintiff of the purchased goods by the November 30th deadline or otherwise communicate with Plaintiff regarding the status of the order and delivery, and notwithstanding Defendant M-Boss's knowledge regarding Plaintiff's intent to resell such goods and contractual obligations to deliver said goods by a date certain, Plaintiff defaulted under the Resale Contract solely as a result of its inability to complete the order thereunder and make delivery of same to ACG as required by the

terms of the Resale Contract, causing Plaintiff to lose anticipated profits of no less than $70,645.97 from the resale of the purchased goods to ACG.

25. After several more weeks of unsuccessful attempts to contact M-Boss, in or around late December 2022 or early January 2023, Defendants M-Boss and Perk finally responded to Plaintiff's inquiries, advising Plaintiff that the months' long delay in receiving the purchased goods under the Agreement was due to the actions of other parties, not M-Boss, and that Plaintiff need not worry because M-Boss would be making imminent delivery to Plaintiff of the goods in full under the Agreement, such that Plaintiff could still resell the acquired goods and satisfy its obligations under the Resale Contract.

26. Convinced by Defendants' representations, and in reliance of Defendants' assurances of performance and delivery under the Agreement, Plaintiff not only agreed to provide M-Boss with additional time within which to make delivery of the goods under the Agreement, but Plaintiff also agreed to continue doing business with Defendant M-Boss, resulting in Plaintiff, on or about January 6, 2023, entering into a second agreement with M-Boss for the purchase, manufacturing, and delivery of approximately 140 custom items and accessories, as more fully described therein, for resale to a third party contractor, for the total purchase price of $4,130.20, with such order to be shipped by Defendant M-Boss to Plaintiff on or before February 6, 2023 (the "2nd Agreement"). A true and correct copy of the 2nd Agreement is attached hereto and incorporated herein as **Exhibit 3.**

27. At all times material hereto, Defendant M-Boss knew or should have known that Plaintiff intended to resell the items and accessories acquired from M-Boss pursuant to the 2nd Agreement at a markup to a 3rd party buyer.

92732373.1

28. Shortly thereafter, in accordance with its obligations under the 2nd Agreement, on or about January 9, 2023, Plaintiff, at the direction of Defendant M-Boss, sent payment in the amount of $4,130.20, as payment in full under the 2nd Agreement, to a bank account titled in the name of Defendant GJP, a company with whom Plaintiff was not in privity with, had no business relationship with, nor was otherwise indebted to, and which payment was received and voluntarily accepted by GJP and/or M-Boss.  When questioned by Plaintiff regarding the payment direction and relationship of GJP, Defendants M-Boss and Perk assured Plaintiff it was ok and that it was part of one big pot since GJP, like M-Boss, was also wholly owned by Defendant Perk.  A true and correct copy of Plaintiff's Bank Statement reflecting payment to Defendant GJP is attached hereto and incorporated herein as **Exhibit 4.**

29. At all times material hereto, Defendant Perk failed to follow corporate formalities with respect to the operation and management of Defendants, M-Boss and GJP, rather, Defendants were treated as a single entity and the alter ego of each other and served as the mere instrumentality of Defendant Perk.

30. Unfortunately, notwithstanding Defendants' repeated assurances regarding its intent to perform and deliver under the Agreement (and subsequently under the 2nd Agreement), Defendants' representations were knowingly false as Defendants never had (nor did they) any intent of performing and making delivery of the purchased goods to Plaintiff within the time promised.  Rather, Defendants' statements were made with the intent to deceive Plaintiff and buy Defendants a few additional weeks of time to use/spend/replenish/commingle the money previously paid to it by Plaintiff for purposes other than the manufacturing and delivery of goods under the Agreement.

31. Indeed, not only did Defendants take advantage of this extra time to make further (and improper) use of Plaintiff's previously paid money, Defendants, separately, also used this period as an opportunity to further plunder from Plaintiff. More specifically, unbeknownst to Plaintiff at the time, on or about January 17, 2023, Defendant GJP, despite Plaintiff having never been indebted to GJP for any sum of money whatsoever, unjustifiably debited the sum of $2,969.87 from Plaintiff's bank account (the same account Plaintiff was directed to make payment from to GJP by M-Boss under the 2nd Agreement), without the authority or consent of Plaintiff.[2] A true and correct copy of Plaintiff's Bank Statement reflecting the unauthorized withdrawal of funds by Defendant GJP is attached hereto and incorporated herein as **Exhibit 5.**

32. At all times material hereto, Defendants interchangeably used the property of each other as if it were their own, including sharing corporate funds, for the personal use of Defendant Perk and to pay the debts of each other.

33. To date, despite repeated demand for return, Defendants have failed and/or refused to return any portion of the $2,969.87 improperly and unjustifiably taken by GJP from Plaintiff's bank account, permanently depriving Plaintiff of the use and possession of its money.

34. Thereafter, after several more weeks of continued delay and repeated failure by Defendant M-Boss to perform and deliver the purchased goods to Plaintiff under the Agreement, on or about January 10, 2023, Plaintiff, through counsel, sent written notice to Defendants regarding its default under the Agreement and making demand on M-Boss for performance and/or damages pursuant to §§ 2-715 and 2-716 of the Uniform Commercial Code (the "Demand Notice"). The Demand Notice further placed Defendant M-Boss on notice regarding the consequential damages suffered by Plaintiff in connection with the Resale Contract as a result of

---

[2] Nor was Plaintiff indebted to either of the other Defendants at this time.

92732373.1

M-Boss's breach of the Agreement. A true and correct copy of the Demand Notice is attached hereto as **Exhibit 6.**

35. Notwithstanding the Demand Notice, to date, Defendant M-Boss has failed to fully perform under the Agreement including, but not limited to, making delivery in full of all the purchased goods and accessories identified therein to Plaintiff, or otherwise made Plaintiff whole for the damages it suffered, both actual and consequential, as a result of Defendant M-Boss's breach of the Agreement.

36. Similar, contrary to Defendants' representations and assurances regarding Defendant M-Boss's intent to perform under the 2nd Agreement, including making shipment of a completed order with all purchased goods thereunder to Plaintiff by the February 6th deadline for resale, and despite Plaintiff's prior payment of $4,130.20 to Defendant GJP on behalf of M-Boss as payment in full for such goods, M-Boss has likewise defaulted under the 2nd Agreement by failing to deliver or produce any of the approximately 140 custom items and accessories, as more fully described therein, to Plaintiff on or before February 6, 2023, or at any time thereafter.

37. As a direct consequence of Defendant M-Boss's failure to make delivery to Plaintiff of the purchased goods or otherwise perform under the 2nd Agreement by the February 6th deadline or anytime thereafter, and despite having knowledge regarding Plaintiff's intent to resell such goods, M-Boss has caused Plaintiff to suffer harm including, but not limited to, the loss of anticipated revenue and profits in an amount of no less than $4,130.20, from the resale of those goods and items purchased under the 2nd Agreement.

### COUNT I: BREACH OF CONTRACT- AGREEMENT
(against All Defendants)

38. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 37, as if fully set forth herein.

92732373.1

39. Plaintiff and Defendant M-Boss entered into the Agreement for the purchase, manufacturing and delivery of those goods described thereunder to Plaintiff for resale in exchange for the payment of $86,384.54. *See* Ex. 1.

40. On or about September 27, 2022, Plaintiff fully performed its obligations under the Agreement by tendering payment in the amount of $86,384.54, as payment in full for the goods described under the Agreement, to M-Boss.

41. Notwithstanding Plaintiff's payment, M-Boss failed to deliver the goods purchased by Plaintiff under the Agreement in accordance with the terms therein, in breach of its obligations thereunder.

42. As a result of M-Boss's breaches under the Agreement, Plaintiff has been harmed.

43. As the alter ego of M-Boss, Defendants, GJP and Perk, should also be held liable for the resulting harm to Plaintiff caused by M-Boss's breaches under the Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT
(against All Defendants)

44. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 17, 21 through 25, 29, and 32, as if fully set forth herein.

45. This Count is pled in the alternative to Count I.

46. Defendant M-Boss has been enriched in the amount of $86,384.54, received as payment from Plaintiff for goods Defendant never provided.

92732373.1

47. Defendant M-Boss has been enriched at the expense of Plaintiff in the amount of $86,384.54.

48. It would be inequitable to permit Defendant M-Boss to retain the monies paid to it by Plaintiff under the circumstances, and good conscience requires that Defendant M-Boss make restitution to Plaintiff for all such amounts.

49. As the alter ego of M-Boss, Defendants, GJP and Perk, should also be held liable for the amounts Defendant M-Boss was unjustly enriched at the expense of Plaintiff, as described herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

### COUNT III: BREACH OF CONTRACT- 2ND AGREEMENT
(against All Defendants)

50. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 37, as if fully set forth herein.

51. Plaintiff and Defendant M-Boss entered into the 2nd Agreement for the purchase, manufacturing and delivery of those goods described thereunder to Plaintiff for resale in exchange for the payment of $4,130.20. *See* Ex. 3.

52. On or about January 9, 2023, Plaintiff fully performed its obligations under the Agreement by tendering payment in the amount of $4,130.20, as payment in full for the goods described under the 2nd Agreement, to Defendant GJP, at the direction of M-Boss.

92732373.1

53. Notwithstanding Plaintiff's payment, M-Boss failed to deliver the goods purchased by Plaintiff under the 2nd Agreement in accordance with the terms therein, in breach of its obligations thereunder.

54. As a result of M-Boss's breaches under the 2nd Agreement, Plaintiff has been harmed.

55. As the alter ego of M-Boss, Defendants, GJP and Perk, should also be held liable for the resulting harm to Plaintiff caused by M-Boss's breaches under the Agreement.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

## COUNT IV: UNJUST ENRICHMENT
(against All Defendants)

56. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 17, 21 through 25, 29, and 32, as if fully set forth herein.

57. This Count is pled in the alternative to Count III.

58. Defendants M-Boss and GJP have been enriched in the amount of $4,130.20, received as payment from Plaintiff for goods Defendants never provided.

59. Defendants M-Boss and GJP have been enriched at the expense of Plaintiff in the amount of $4,130.20.

60. It would be inequitable to permit Defendants M-Boss and GJP to retain the monies paid to it by Plaintiff under the circumstances, and good conscience requires that Defendants M-Boss and GJP make restitution to Plaintiff for all such amounts.

61. As the alter ego of M-Boss and GJP, Defendant Perk, should also be held liable for the amounts Defendants were unjustly enriched at the expense of Plaintiff, as described herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

## COUNT V: CONVERSION-2ND AGREEMENT
(against All Defendants)

62. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 37, as if fully set forth herein.

63. Plaintiff has clear legal title and ownership to the specific funds maintained in its bank account.

64. Defendant GJP exercised unauthorized dominion over Plaintiff's property in interference with and derogation of Plaintiff's legal title and superior right to such funds held in its bank account, by unjustifiably and improperly withdrawing the sum of $4,130.20 from Plaintiff's bank account without authority or consent.

65. Despite repeated demand by Plaintiff to Defendant GJP for return of the specific funds improperly withdrawn from its bank account, GJP has refused, permanently depriving Plaintiff of its rights in the money illegally taken from its bank account.

66. As the alter ego of GJP, Defendants M-Boss and Perk, should also be held liable for the amounts of money unjustifiably withdrawn and converted, as described herein, by Defendant GJP.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages in an amount of no less than

92732373.1

$4,130.20, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

### COUNT VI: CONVERSION
(against All Defendants)

67. Plaintiff re-alleges and re-incorporates the allegations contained in paragraphs 1 through 37, as if fully set forth herein.

68. Plaintiff has clear legal title and ownership to the specific money maintained in its bank account.

69. Defendant GJP exercised unauthorized dominion over Plaintiff's property in interference with and derogation of Plaintiff's legal title and superior right to such funds held in its bank account, by unjustifiably and improperly withdrawing the sum of $2,969.87 from Plaintiff's bank account without authority or consent.

70. Despite repeated demand by Plaintiff to Defendant GJP for return of the specific funds improperly withdrawn from its bank account, GJP has refused, permanently depriving Plaintiff of its rights in the money illegally taken from its bank account.

71. As the alter ego of GJP, Defendants M-Boss and Perk, should also be held liable for the amounts of money unjustifiably withdrawn and converted, as described herein, by Defendant GJP.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for damages against Defendants, M-Boss, GJP, and Perk, including actual damages in an amount of no less than $2,969.97, lost profits and opportunity, incidental damages, consequential damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other relief as this Court deems just and proper.

92732373.1

Dated: March 31, 2023

          Respectfully submitted,

          **LEWIS BRISBOIS BISGAARD & SMITH LLP**
          *Counsel for Plaintiff*

          By: */s/ Peter T. Shapiro*
          Peter T. Shapiro, Esq.
          David H. Haft, Esq. (*Admission pending*)
          77 Water Street
          New York, NY 10005
          212.232.1300
          Peter.shapiro@lewisbrisbois.com
          David.haft@lewisbrisbois.com